**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSE REYES ROMERO,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:08-CV-414-A** |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

## I.  FINDINGS AND CONCLUSIONS

### A.  NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B.  PARTIES

Petitioner Jose Reyes Romero, TDCJ-ID #1073796, is in custody of the Texas Department

of Criminal Justice, Correctional Institutions Division, and is presently incarcerated in the French

M. Robertson Unit in Abilene, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal

Justice, Correctional Institutions Division (TDCJ).

## C. Factual and Procedural History

Romero is confined in TDCJ as a result of his 2001 Tarrant County conviction for aggravated robbery with a deadly weapon.  (Petition at 2)  By this habeas petition, Romero challenges a December 19, 2007 disciplinary proceeding conducted at the Robertson Unit, resulting in the following sanctions:  30-day recreation and commissary restrictions, reduction in line class status from L2 to L3, and loss of 20 days' good time.  (DHR at 1)  Romero was charged in Disciplinary Case No. 20080103368 with being out of place, a level 2, code 27.0 violation.  (Id. at 5)

On December 12, 2007, Corrections Officer G. Fenwick accused Romero of being "in 3 section when in fact said offender had no authorization to be in such place."  (Id.)  Officer Fenwick alleged in the offense report, and testified at the disciplinary hearing, that he identified Romero by his TDCJ-ID card.  (Id. at 6)  Romero subsequently told the investigating officer that the inmate who was out of place was not him but another inmate, Ramsey Smith.  (Id. at 3-4)  Romero received notice of the charge and attended a disciplinary hearing on December 19, 2007.  At the hearing, Romero pled not guilty to the charge and was represented by inmate "counsel substitute."  (Id. at 1)  He was offered the opportunity to give an oral statement, cross-examine witnesses, and present favorable evidence, including the written statements of inmates Ramsey Smith, confessing to the violation, and Malcolm Price, his cellmate, claiming Romero at no time left their section after returning from dinner.  (Id. at 8-9)  Romero also requested the disciplinary hearing officer view security videotape to prove he not out of place on the date and time in question, but the hearing officer stated he could only consider the evidence presented at the hearing.  (Id. at 1-2)  After considering the evidence, the hearing officer found Romero guilty of the charged offense.  (Id. at 1-2)  Romero filed Step 1 and Step 2 grievances contesting the guilty finding, to no avail.  (DGR

at 1-4)   This federal petition followed.   Quarterman has filed an answer with supporting documentation, to which Romero has filed a reply.

## D.  Issues

Romero claims his conviction was obtained in violation of his right (1) to be free of the use of false evidence and testimony under the Eighth and Fourteenth Amendments, (2) to be free of retaliation for filing a § 1983 civil rights action against the hearing officer and four other prison officials and/or officers, (3) to marshal a defense and present credible evidence in rebuttal to the accusing officer's report and testimony, and (4) to a fair and impartial hearing officer.  (Petition at 7-8A)

## E.  RULE 5 STATEMENT

Romero appears to have sufficiently exhausted his claims by raising them in his Step 1 and Step 2 grievances.  *See* 28 U.S.C. § 2254(b)(1), (c).

## F. DISCUSSION

### A.  *Eighth Amendment*

Romero claims that he is innocent of the charge and that his disciplinary conviction, for a violation that another inmate confessed to and was disciplined for, was obtained by the use of false evidence and testimony, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  The basic rule is that a petition for a writ of habeas corpus is the proper vehicle for challenging the fact or duration of a prisoner's confinement while a civil rights lawsuit is the proper vehicle for challenging unconstitutional conditions of confinement.  *See Carson v. Johnson,* 112 F.3d 818, 820 (5th Cir. 1997); *Jackson v. Torres,* 720 F.2d 877, 879 (5th Cir. 1983).  Romero's claim arguably concerns the conditions of his confinement the remedy of his Eighth Amendment

claim is in the nature of a civil rights lawsuit.  His apparent attempt to raise civil rights issues in a habeas corpus proceeding lacks merit.

## B.  Due Process

Romero claims that he is innocent of the charge and that his conviction was obtained by the use of false evidence and testimony, in violation his right to due process under the Fourteenth Amendment.  Prisoners charged with rule violations are entitled to certain procedural due process requirements under the Fourteenth Amendment when the disciplinary action results in a sanction that will impinge upon a liberty interest.  *See Sandin v. Conner,* 515 U.S. 472, 484 (1995) (holding that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  The minimum amount of procedural due process required for prison inmates under these circumstances includes:  (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action.  *See Wolff v. McDonnell ,* 418 U.S. 539, 563-67 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972).

In Texas, only sanctions that result in the loss of good time credits for inmates who are eligible for release on mandatory supervision, or that otherwise directly and adversely affect release on mandatory supervision, impinge upon a protected liberty interest, that is, a constitutional expectancy of early release.  *See Malchi v. Thaler,* 211 F.3d 953, 957-58 (5th Cir. 2000).  Romero

is not eligible for release on mandatory supervision.  The mandatory supervision statute in effect in 2000, when he committed aggravated robbery, provided that a prisoner may not be released to mandatory supervision if the prisoner is serving a sentence for aggravated robbery.  *See* Act of May 23, 1997, R.S., 75th Leg., chap. 238, 1977 Tex. Gen. Laws 1160 (currently TEX. GOV'T CODE ANN. § 508.149(a)(12) (Vernon Supp. 2008)).  Since Romero is ineligible for mandatory supervision, the loss of good time credits in his disciplinary case does not implicate a protected liberty interest.  *Kimbrell v. Cockrell,* 311 F.3d 361, 362 (5th Cir. 2002); *Malchi,* 211 F.3d at 956-58.  Nor do recreation and commissary restrictions or the reduction in line class status implicate due process concerns.  *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) (commissary and cell restrictions do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995) (reductions in line class status do not implicate due process concerns).  The same holds true with regard to any expectation of release on parole.  *See Madison,* 104 F.3d at 768 (holding that because it is entirely speculative whether a prisoner will be released on parole, there is no constitutional expectancy to parole in Texas).  As a matter of due process, no constitutional violation has occurred, as a matter of due process, thus Romero's claims do not present a basis for federal habeas relief.

Furthermore, federal courts cannot retry every prison disciplinary dispute.  Rather, a court may act only where arbitrary or capricious action is shown.  *See Smith v. Rabelais,* 659 F.2d 539, 545 (5th Cir. 1984).  This means that prison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the result reached.  *See id.*  An officer's report, by itself, is sufficient to support a finding of guilt.  *See Hudson v. Johnson,* 242 F.3d 534, 536-37 (5th Cir. 2001).  The gravamen of Romero's complaint is that he is innocent of the charge because he was in

5

his cell at the time, to which his cellmate confirmed and security videotape would prove, and because inmate Smith confessed to and was disciplined for the offense.  However, this court cannot retry the disciplinary case and believe him instead of the accusing officer, who filed the report and testified by telephone that he confirmed Romero's identity by his prison identification card after escorting Romero back to his section and placing him in his cell.  The officer's report and testimony does constitute "some evidence" of guilt.  The disciplinary officer's decision was based on the offense report and the accusing officer's written and telephonic statements.  Thus, the hearing officer apparently found Romero's denial of the charges, explanation of the events, and evidence incredible, while finding the officer's version of the events credible.  It was within the disciplinary officer's discretion to make credibility and reliability determinations as to the evidence and to determine whether it was necessary to review security videotape prior to disposition of Romero's case.  *See Smith*, 659 F.2d at 545-46).  Romero was offered the opportunity to give an oral statement, cross-examine witnesses, and present favorable evidence.  That is all that was constitutionally required.

## C.  Retaliation

Romero contends that the false disciplinary charge was brought against him in retaliation for filing a § 1983 civil rights lawsuit against prison officials and/or officers and that he was denied a fair and impartial decision maker because the hearing officer was named as a defendant in the prior lawsuit.  Prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution.  *See Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  Nevertheless, claims of retaliation in the context of habeas corpus review of prison disciplinary proceedings are approached with scepticism.  *Id.* at 1166.  To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and establish that but for the retaliatory

motive the complained of incident would not have occurred. *Id.* Thus, the prisoner must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* A prisoner who brings a retaliation claim bears a heavy burden that may not be satisfied with conclusory allegations or his own personal beliefs. *See Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999). Despite Romero's allegations of retaliation, he provides no evidence to support his claim, and the audiotape of the disciplinary hearing does not reveal any indication, that the hearing officer was aware of Romero's § 1983 lawsuit or that the disciplinary conviction was the result of retaliation. There is no evidence that the hearing officer was biased against Romero or predisposed to finding Romero guilty or that the officer's finding of guilt was based on less than constitutionally sufficient evidence.

## II.  RECOMMENDATION

Romero's petition for writ of habeas corpus should be denied.

### III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until May 15, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. §

636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until May 15, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 24, 2009.


            /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

8